**MELVIN WILLIAMS CONSTRUCTION, INC., Appellant,**

v.

**James David SALTER, Jr., et al., Appellees.**

**No. 09–84–312 CV.**

Court of Appeals of Texas, Beaumont.

Jan. 16, 1986.

Rehearing Denied Feb. 6, 1986.

**394**

Dewey J. Gonsoulin, Beaumont, for appellant.

Richard C. Hile, Jasper, Richard Morrison, Houston, Mark Morefield, Liberty, for appellees.

## OPINION

DIES, Chief Justice.

On Labor Day, September 1, 1980, at approximately 11:20 p.m., one of the plaintiffs below, James Salter, was driving his father's pickup in a northerly direction on FM 770, about one mile north of Raywood, when his vehicle was in a collision with another pickup being driven by Junior Bryant traveling in the opposite or southerly direction. Richard Hopson was a passenger in the Bryant vehicle owned by Melvin Williams Construction, Inc. Salter and the widow of Hopson (on behalf of herself and their children) sued Williams (all plaintiffs took a dismissal as to Bryant), and recovered a verdict in a jury trial, from which verdict Williams has perfected appeal to this court.

Williams' first three points of error (grouped in its brief) complain there was no evidence, insufficient evidence, or that the jury's finding that Junior Bryant was engaged in the service of Melvin Williams Construction, Inc., is against the overwhelming weight and preponderance of the evidence. We approach these challenges under the directions of *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965), and *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Williams' home office was in Hemphill, Texas. It had a job laying cable in Liberty County. Brady, the over-all foreman, was sent there on September 1, 1980. On arriving, he rented rooms in the White Heron Motel in Liberty for himself, Bryant, Hopson, and three Mexican Nationals who would follow him. They did. Bryant and Hopson left their luggage at the motel; and Brady, Bryant and Hopson that evening went to the Honey Bee Lounge for beer, food and pool. Williams paid Bryant and Hopson three hours pay for their drive to Liberty. Should they wish to quit the job, they (Bryant and Hopson) were privi-

leged to drive the vehicle they had driven back to Hemphill. Such had been done by other employees in the past. Williams testified that Brady had told him Bryant and Hopson were going to quit. The three (Brady, Bryant, and Hopson) went into the Honey Bee Lounge, ate, drank three beers, played pool, and then, according to Brady, the other two went to the pickup to wait for Brady to finish his game of pool. When Brady finished he found that the pickup, Bryant and Hopson were gone. After awhile he got a ride to the motel and found that Bryant and Hopson had taken their luggage out. Early the next morning Brady learned of the collision in which both Bryant and Hopson were killed. He didn't call Williams until later that morning.

Williams makes a very strong and appealing argument that Bryant could not have been in his service at the time of the collision because he was heading south (Hemphill is north); it was a holiday; Bryant was not being paid at the time; and he had received no instructions to drive to Raywood. On the other hand, the jury heard from Williams himself that they were going to quit; if they did, he expected them to return the pickup to Hemphill; and they had taken their clothes from the motel (part of the luggage was found at the wreck site). If Bryant was on his way back to Hemphill to quit, admittedly he would be in the course and scope of his employment at the time of the collision.

■ Where the evidence is conflicting, a reviewing court will not disturb the verdict. See the many authorities in *5 TEX.JUR.3d, Appellate Review sec. 687* (1980). In Texas, when it is proved that the vehicle was owned by the defendant and that the driver was in the employment of defendant, a presumption arises that the driver was acting within the scope of his employment when the accident occurred. The burden shifted to Williams to prove the contrary. *Broaddus v. Long,* 135 Tex. 353, 138 S.W.2d 1057 (1940). *See also, Best Steel Bldg., Inc. v. Hardin,* 553 S.W.2d 122 (Tex. Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Car, Ltd. v. Smith,* 590 S.W.2d 738 (Tex.

Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). That Bryant was headed south at the time of the collision, while Hemphill was north, is not fatal to plaintiffs' position. *Dictaphone Corp. v. Torrealba,* 520 S.W.2d 869, 872 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). These points of error are overruled.

■ Williams' next six points of error all challenge the jury's findings that Brady's failure to remove the keys from the pickup was negligence, and a proximate cause of the occurrence in question. Since plaintiffs were privileged under company policy for Bryant to do as he did, it does seem paradoxical that the jury made the findings we here examine. However, it is our duty to reconcile the findings, if possible. *3 McDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS sec. 15.06.2* (1983 Rev.Vol.). And, the jury could very well have concluded that while Bryant was on his way back to Hemphill, in view of his having had three beers, it was negligent of Brady not to take the ignition keys with him into the Honey Bee. At any rate, the finding that Brady's conduct in this regard was a proximate cause of the collision is immaterial since the jury also found Bryant was on the wrong side of the road at the time of the collision. *See 3 McDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS sec. 15.06.4* (1983 Rev.Vol.). These points of error are overruled.

Appellant cites no authority to support point of error number ten. We have answered it substantially above. *See Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985 (1949).

Appellant's next four points of error all challenge the jury findings that Hopson was not engaged in Williams' service at the time of the collision. Since Bryant was driving at the time of the collision, the jury no doubt concluded Hopson's intentions were different from Bryants. At any rate these challenges are the same previously made by appellant, whose real (and understandable) bone of contention probably is, How can Bryant be in Williams' service

unless Hopson is likewise? But this is not an unreconcilable finding; therefore, our duty is clear. See section of *McDONALD* previously cited.

■ Appellant's next six points of error contest the damage findings: that Salter would sustain $50,000 for loss of future earning capacity; that Salter will sustain $3,000 future medical expenses.

The evidence shows Salter sustained a fractured ankle and other injuries. A future operation is probable. His hospital stay, while not overwhelming, was substantial. His medical expenses (stipulated) exceeded $6,000. We believe the following authorities support these findings. *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710 (1943); *Soriano v. Medina*, 648 S.W.2d 426 (Tex.App.—San Antonio 1983, no writ); *City of Rosenberg v. Renken*, 616 S.W.2d 292 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *Thomas v. Jenkins*, 481 S.W.2d 464, 466 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.); *Mills v. Thomas*, 435 S.W.2d 593 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.). Future Medical expense: *Hughett v. Dwyre*, 624 S.W.2d 401, 405 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.); *Southwestern Bell Tel. Co. v. Davis*, 582 S.W.2d 191, 195 (Tex.Civ.App.—Waco 1979, no writ); *Brown v. Friedman*, 451 S.W.2d 588, 590 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ); *City of Houston v. Moore*, 389 S.W.2d 545, 550 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.); *Edens-Birch Lumber Co. v. Wood*, 139 S.W.2d 881, 887 (Tex.Civ.App.—Beaumont 1940, writ dism'd judgmt cor.). *3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 80.09* (1982). These points of error are overruled.

■ Williams' final point of error complains of the jury's findings in Special Issues Nos. 13 and 14, which were incorporated in the judgment against Williams, concerning the damage to the vehicle Salter, Jr., was driving. The proof shows the vehicle was owned by Salter's father who was not a party to this suit.

Plaintiffs' respond by urging waiver in that no verified denial was filed in accordance with *TEX.R.CIV.P. 93*.

That rule provides, in part, as follows:

"A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit.

" . . .

"(b) That the plaintiff has not legal capacity to sue, or that the defendant has not legal capacity to be sued.

"(c) That the plaintiff is not entitled to recover in the capacity in which he sues, or that the defendant is not liable in the capacity in which he is sued.

" . . .

"(e) That there is a defect of parties, plaintiff or defendant."

Plaintiffs cite *Biggs v. Garrett*, 651 S.W.2d 342 (Tex.Civ.App.—El Paso 1983, no writ). That case is not precisely in point. A cause of action should have been brought by Garrett Building Centers, Inc. but instead was brought by Robert Garrett, individually. The court properly held that whether the contractor, individually, had capacity to sue on a contract was waived where the homeowner failed to file a sworn pleading alleging any defect of parties.

"Capacity" refers to a person who has no *legal* capacity to sue, or not being entitled to recover in the capacity he sues. *See Conrad v. Artha Garza Co.*, 615 S.W.2d 238 (Tex.Civ.App.—Dallas 1981, no writ). But we have found no case holding that when the party who sues or is sued has no legal right to recover, or legal responsibility to respond, it must be denied by verification or it is waived. This point of error is sustained.

The judgment of the trial court is affirmed, with the exception of the award for damage to the Salter vehicle for which plaintiff Salter recover nothing.

Affirmed in part; reversed and rendered in part.