**Affirmed and Memorandum Opinion filed January 15, 2026.**



In The

# Fifteenth Court of Appeals

## NO. 15-25-00155-CV

**NEIL GEORGE SWITKOWSKI, Appellant**

**V.**

**COURTNEY SINCLAIR ARCHIBOLD AND OFFICE OF THE ATTORNEY GENERAL OF TEXAS, Appellees**

**On Appeal from the 20th District Court**
**Milam County, Texas**
**Trial Court Cause No. CV40037**

## MEMORANDUM OPINION

Appellant Neil George Switkowski appeals from the trial court's order enforcing his child support obligations to Appellee Courtney Sinclair Archibold and denying his requested relief under multiple motions. The trial court also granted the Office of Attorney General's ("OAG") motion to dismiss under Section 231.016 of the Texas Family Code. We affirm.

BACKGROUND

On April 23, 2021, Switkowski and Archibold entered into a divorce decree obligating Switkowski to pay Archibold child support on a monthly basis. The decree states that Switkowski "has agreed to the terms of the judgment to the extent permitted by law and evidence by [Switkowski's] signature and the signature of his attorney of record . . . ."

On October 30, 2024, the OAG, representing the State of Texas, filed an enforcement motion alleging that Switkowski failed to comply with the child support obligation. In response, Switkowski filed a Motion to Dismiss with Prejudice for Gross Material Breach of Contract, asserting that the divorce decree was a contract that Archibold breached by failing to abide by the visitation provisions. Switkowski then filed several other motions, including a Motion for Declaratory Relief and to Dismiss Child Support Enforcement for Unconstitutional Interference with Fundamental Rights on Behalf of All Other Similarly Situated.[1] The OAG filed an answer and a supplemental motion to dismiss each of Switkowski's motions under Section 231.016 of the Texas Family Code, arguing that such motions (1) were frivolous and malicious, (2) failed to state a claim on which relief may be granted, and (3) sought monetary relief from an immune agency.

On May 1, 2025, Switkowski filed a "Notice of Constitutional Challenge" requesting that the trial court find the "Title IV-D child support enforcement model" and related Texas Family Code provisions unconstitutional. On the same day, Switkowski also filed a Motion for Judicial Certification, Stay of Proceedings, Temporary Injunction, and Review of Petitioner's Proposed Modification to Child

---

[1] Other additional motions included, among others, a Motion to Reform Child Support Calculations and Enforcement and a Motion for Sanctions Against the Office of the Attorney General for Violations of Public Policy, Clean Hands Doctrine, and Contract Enforcement Principles.

Support Calculation & Collection (the "Motion for Judicial Certification").

On May 19, 2025, the trial court held a hearing on the various motions.[2] The trial court thereafter issued its Order Enforcing Child Support Obligation, in which the court denied Switkowski's Notice of Constitutional Challenge and Motion for Judicial Certification, granted OAG's motion to dismiss, and denied all other relief not expressly granted. The trial court did not state its reasons for these judgments. The trial court also found that Switkowski owed $23,474.20 in child support arrears and held him in contempt for failure to pay.

Switkowski appealed to the Third Court of Appeals which, due to the constitutional issues involved and the inclusion of the OAG as a party, transferred the case to this Court. Tex. Gov't Code §§ 73.001(c)(2), 22.220(d)(2); Tex. R. App. P. 27a.

## DISCUSSION

Initially, we must note that, on appeal, "the burden is upon the party appealing from a trial court judgment to show that the judgment is erroneous in order to obtain a reversal." *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex. 1968) (per curiam); *Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 346 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In addition, "[w]e construe liberally pro se pleadings and briefs; however, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure." *In re N.E.B.*, 251 S.W.3d 211, 211–212 (Tex. App.—Dallas 2008, no pet.) (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978)). "To do otherwise would give a pro se litigant an unfair advantage over a litigant who

---

[2] A reporter's record of the hearing was not filed.

3

is represented by counsel." *Id*. at 212.

In eleven issues on appeal, Switkowski, representing himself pro se, raises several challenges to the constitutional foundations of Texas's family law system, Texas's participation in Title IV-D of the federal Social Security Act 42 U.S.C. § 651, et seq., and other matters related to Texas family law. These issues include the following:

1. Under the "historical-tradition" test in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022), Texas lacks jurisdiction over marriage licensing, no-fault divorce, and post-divorce matters.

2. Texas's participation in Title IV-D improperly authorizes the OAG to act as an "adverse collections party between private citizens."

3. Title IV-D "incentive payments" create "pecuniary interests" for the judiciary and executive branch.

4. Texas's jurisdiction over dissolved marriage contracts has no historical foundation under *Bruen* and violates due process requirements.

5. Texas's characterization of child support as both a debt and non-debt obligation violates equal protection.

6. The "best interest of the child" doctrine is void for vagueness.

7. Assigning child support obligations to a non-biological father constitutes fraud in the inducement.

8. Texas's no-fault divorce laws are inconsistent with contract law principles and due process and equal protection guarantees.

9. Denial of court-ordered possession and access rights under the divorce decree must be recognized as a civil tort.

10. An expense-based child support system is the only "constitutionally compliant alternative" to the current scheme.

11. Whether OAG is prevented from enforcing child support obligations under the "Clean-Hands Doctrine" due to the OAG's alleged failure to enforce visitation provisions.

As discussed below, we overrule each issue.

## I.      First, Fourth and Eighth Issues

We first consider Switkowski's first, fourth and eighth issues together because each concerns the constitutionality of Texas's marriage and divorce law. Switkowski argues that state involvement in marriage licensing fails *Bruen*'s historical tradition test because it is not supported by "the Nation's founding principles." He makes a similar argument regarding Texas's no-fault divorce laws and the State's jurisdiction over post-divorce matters, stating each lacks a historical foundation under *Bruen*. He further argues that *Loving v. Virginia*, 388 U.S. 1 (1967), "exposed the racial and bigoted origins" of marriage licensing which renders the entire scheme constitutionally void. Finally, he claims that state family law regulations are discriminatorily applied in violation of *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).

Switkowski's challenges fail. Switkowski provides no support—legal or factual—for his conclusion that state involvement in marriage is inconsistent with this country's historical tradition. Further, *Bruen* is a Second Amendment case; Switkowski fails to show how its holdings on how the Second Amendment must be interpreted demonstrate any error in the orders in this case. *Bruen*, 597 U.S. at 2–3. Furthermore, *Loving*'s holding addressed whether a state has authority to prevent marriages solely on the basis of race in violation of the Fourteenth Amendment's Equal Protection and Due Process Clauses. *See Loving*, 388 U.S. at 8, 12. Switkowski does not explain how *Loving* would require the reversal of the order on

5

appeal, which does not involve issues of race. Switkowski also failed to present evidence of discriminatory enforcement of child support orders such that any lopsided enforcement is a denial of equal protection under *Yick Wo. See Yick Wo*, 118 U.S. at 373–74 (holding that discriminatory enforcement of a law is unconstitutional). In short, Switkowski has failed to demonstrate constitutional error in the trial court's order.

Sitkowski also asserts in his reply brief that the trial court's reliance on Texas Family Code Section 231.016 to dismiss his constitutional challenges was legally erroneous. Under Section 231.016, a court may dismiss a cause of action against a Title IV-D agency such as OAG if the cause of action is frivolous or fails to state a claim on which relief may be granted. Tex. Fam. Code § 231.016(1)–(2). Switkowski claims that because his pleadings were supported by citations to *Loving, Bruen, and Yick Wo*, they could not be declared frivolous. But as we have explained, those cases do not support Sitkowski's constitutional claims. We thus overrule Switkowski's first, fourth and eighth issues.

## II.    Second and Third Issues

We next consider Switkowski's second and third issues together, as both concern the OAG's role under Title IV-D. Switkowski argues that the OAG has "volunteered to engage in fictitious representation under Title IV-D of the Social Security Act" and lacks standing to bring suit. Switkowski asserts that the OAG "exceeded its statutory authority by cloaking itself as trustee, a fiduciary, or a guardian ad litem for children of intact parents . . . not receiving public assistance." He further asserts that the OAG actually operates as a "collection agent" under federal law, "seeking to maximize federal incentive payments" and "transforming the judiciary into a collection arm of the executive." Finally, Switkowski argues that Title IV-D enforcement disproportionately affects non-custodial parents, violating

6

equal protection guarantees and discriminatory enforcement protections under *Yick Wo*.

The clearly stated purpose of Title IV-D is to authorize federal appropriations to assist states in "enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living." 42 U.S.C. § 651. The Texas Family Code designates the attorney general as Texas's Title IV-D agency to provide services under Title IV-D without regard to whether the child has received public assistance and gives the attorney general standing to file a lawsuit for the modification or enforcement of child support obligations. *See* Tex. Fam. Code §§ 101.033, 102.007, 231.001, 231.102. These statutes leave no room for Switkowski's argument that the OAG's role in child support enforcement is "fictitious" or that the OAG lacks standing. In addition, Switkowski failed to present any evidence in support of his claim that Title IV-D enforcement is discriminatory so as to be unconstitutional under *Yick Wo*, 118 U.S. at 373–74. We overrule Switkowski's second and third issues.

## III.   Fifth Issue

In his fifth issue, Switkowski asserts that the Texas Supreme Court improperly characterizes child support as an "obligation" as opposed to a "civil debt between adults" in which one parent claims a reimbursement for the child's expenses. Appellant asserts that "[e]very other reimbursement scheme in Texas proceeds through civil channels with the safeguards of due process, consumer protection, and contract principles." Appellant further asserts that, upon failure to pay, "constitutional protections for debtors" should attach.

This Court is firmly bound by the Texas Supreme Court's clear refusal to recognize child support payments as a debt. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (per curiam) ("But the obligation to support a child is viewed as a legal duty

7

and not as a debt."); *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993). We overrule Appellant's fifth issue.

## IV.     Eleventh Issue

In his eleventh issue, Switkowski argues that the "Clean Hands Doctrine" prevents both Archibold and the OAG from seeking financial enforcement of the divorce decree due to their respective failures to abide by and enforce the visitation provisions of the decree. However, Switkowski points to no evidence in the record demonstrating that Archibold violated the visitation provisions of the decree or that the OAG was required to enforce such provisions and failed to do so. We overrule Switkowski's eleventh issue.

## V.     Remaining Issues

In his sixth, seventh, ninth, and tenth issues, Switkowski makes various arguments related to family law generally, but fails to explain how, even if we agreed with him, he would be entitled to a reversal of the trial court's order. *See Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557 (Tex. 1987) (recognizing that "the burden is on a party appealing from a trial court judgment to show that the judgment is erroneous in order to obtain a reversal"). Where an appellant's issues do not point to any error committed by the trial court, "[i]t would be inappropriate for this court to speculate as to what appellant may have intended to raise as an error. . . ." *See Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "To do so would force this court to stray from our role as a neutral adjudicator and become an advocate for appellant." *Id.* Because Switkowski does not point out any error committed by the trial court, he has failed to present these as sufficient issues for our appellate review. *See id.* (citing Tex. R. App. P. 38.1(f)).

**CONCLUSION**

Switkowski makes a number of arguments regarding Texas family law. However, he has failed to demonstrate any error in the trial court's order. We affirm.

<u>/s/ April Farris</u>
April Farris
Justice

Before Chief Justice Brister and Justices Field and Farris.